JOHN W. WATSON, Appellee, v. MISSISSIPPI RIVER POWER COMPANY, Appellant.

**EXPLOSIVES:** Injuries From Blasting—Negligence Not An Element—Vibration of Earth and Atmosphere. Negligence is not an element of an action for damages to property resulting solely from the vibration of the earth or the concussion of the atmosphere consequent upon the use by defendant, on his own premises and even for a perfectly lawful purpose, of violent explosives.

**PLEADING:** Issue, Proof and Variance—Surplusage—Non-Necessity to prove. A party shall not be compelled to prove more than is necessary to entitle him to the relief asked. (Sec. 3639, Code, 1897.)

PRINCIPLE APPLIED: Plaintiff pleaded that defendant, in constructing a dam, exploded large quantities of explosives on its premises, and that the resulting vibrations of the earth and concussions of the atmosphere injured the foundations and walls of his (plaintiff's) house. Plaintiff pleaded that the blasting was

done (a) negligently and (b) wrongfully. *Held*, negligence not being an element of such an action, plaintiff need not prove it, *even though alleged*, but could recover upon a showing of the *wrongfulness* of the act only.

**MASTER AND SERVANT:** Independent Contractor—Respondeat
3   Superior—Inherently Dangerous Work. If the doing of an inherently dangerous piece of work by the owner would render him liable to a person injured thereby, *without regard to any question of negligence*, then the owner may not escape such consequences by the simple expedient of employing a so-called ''independent contractor'' to do the work for him.

PRINCIPLE APPLIED: The defendant undertook to construct a dam across the Mississippi River. The work necessitated the blasting of vast quantities of rock from the bed of the river and the consequent use of high power explosives. The doing of this work was let to a contractor. The contractor, in performing the work, did exactly what he was employed to do, and did it in exactly the manner in which defendant expected he would do it. The vibrations of the earth and the concussions of the atmosphere caused by the explosions injured plaintiff's building. *Held*, the principle that the owner is not liable for the negligence of an independent contractor had no application, and the owner was liable.

**DAMAGES:** Measure of Damages—Damages to Real Property—Res-
4   toration to Former Condition. The measure of damages for an injury to real property which is susceptible of remedy at a moderate expense is the reasonable cost of restoring the property to the condition in which it was immediately preceding the injury, and not the difference between the fair value of the property immediately before and immediately after such injury.

*Appeal from Lee District Court.*—HENRY BANK, Judge.

WEDNESDAY, FEBRUARY 9, 1916.

ACTION at law for damages. There was a judgment for plaintiff, and defendant appeals. The facts are sufficiently stated in the opinion.—*Affirmed.*

*Blake & Wilson, Hazen I. Sawyer* and *J. O. Boyd*, for appellant.

*Hughes & McCoid*, for appellee.

WEAVER, J.—The plaintiff is, and during the time mentioned in his petition was, the owner of two lots with buildings

and improvements thereon, in the city of Keokuk, Iowa. The defendant, having been granted authority therefor by act of Congress, has been engaged in constructing a dam across the Mississippi River at that place, for the purpose of providing electric power to be sold to users thereof within the area reached or to be reached by its cables and supply lines. Among other things, the plan of this improvement contemplated the erection of a power house in connection with the dam, at a point about 1,000 feet east of the west bank of the river on which the city is built. It also contemplated the construction of certain locks, spillways and a canal. To do this work according to the plan, required the blasting and removal of a very large amount of rock from its natural bed under the river, much of it to the depth of 25 feet. The work of this rock excavation was let to a contractor, the Hydraulic Engineering Company, which performed the service. The work was of such magnitude as to occupy two years or more in its completion, in the course of which, heavy blasts were fired, from day to day. The property owned by plaintiff is situated upon the bluff or highlands, one tract being 4 blocks and the other 14 blocks west of the river.

In his petition, plaintiff alleges that the blasting by a series of violent explosions was continued throughout a period of two years or more, and was of such powerful character that the concussion or jar thereof broke the glass in the windows of his buildings, cracked the walls, loosened and injured the plastering and otherwise injured those structures, and that the damage suffered therefrom was $3,000. He characterizes the acts of defendant as wrongful and negligent, and demands judgment for the recovery of his alleged damages. The defendant's answer is a denial of all the allegations of the petition.

The evidence introduced in the case is not presented by the abstract, except by way of a brief general recital of the matters we have already stated and the further statement that both plaintiff and defendant introduced evidence tending

to support their respective claims under the issues made by the pleadings; that there was no proof that rock or other material was cast upon plaintiff's premises by the blasts; and that the injury complained of was caused solely "from the air concussion or earth vibration" set in action by the explosion of the blasts.

The issues having been submitted to a jury, a verdict was returned for the plaintiff for damages assessed at $500. A motion by defendant to set aside the verdict and for new trial having been overruled, judgment was entered for plaintiff for $500 and costs, and defendant appeals.

I. The initial proposition by appellant is that, in its charge submitting the case to the jury, the court erred in failing to instruct upon the law of negligence as applicable to this controversy. It is said that the plaintiff charged negligence in the blasting, that such allegation was material to his right to recover damages, and that, without proof of the want of due care on defendant's part, a verdict for plaintiff cannot be sustained.

1. EXPLOSIVES: injuries from blasting: negligence not an element: vibration of earth and atmosphere.

It is true that the plaintiff did charge that the blasting was done negligently; and, if we are to hold that a showing of negligence was essential to his right to recover, then the exception is well taken and appellant is entitled to a reversal. But our practice act provides (Code Section 3639) that a party shall not be required to prove more than is necessary to entitle him to relief asked for; and if, in this case, plaintiff was not required to allege negligence in order to state a cause of action, and did allege facts other than negligence upon which, if true, he was entitled to damages, and introduced evidence tending to support the same, then the failure to prove negligence would not be fatal to his right of recovery, and the failure of the court to instruct upon the subject of negligence would not be prejudicial error. *Engle v. Chicago, M. & St. P. R. Co.*, 77 Iowa 661; *Swiney v.*

2. PLEADING: issue, proof and variance: surplusage: non-necessity to prove.

*American Express Co.,* 144 Iowa 342, 348; *Ware v. Anderson,* 107 Iowa 231, 234. In the case at bar, the plaintiff alleged that the acts complained of were wrongful, as well as negligent; and, under the rule above stated, our inquiry is reduced to the single question whether injuries to property caused solely by jar, concussion or vibration of earth and air, produced or set in motion by blasting, constitute, under the circumstances stated, any wrong for which the law affords a remedy.

This question has had the attention of the courts in several other jurisdictions, but thus far, we have had no occasion to pass upon it in the direct and concrete form presented by the record in the present case. An examination of the precedents develops a divergence of judicial opinion. There is a class of cases which, according to appellant's contention, hold that, without allegation and proof of negligence, damages of the kind suffered by the appellee herein cannot be recovered; while others adhere to the doctrine that a showing of negligence is not essential to the liability of a party who uses the dangerous agency of powerful explosives in such place or in such manner that the natural and proximate result thereof is injury to the person or property of another. Some of the cases cited by appellant appear to go to the full extent of the rule which appellant asks us to approve. For example, the Alabama court, in *Bessemer v. Doak,* 44 So. 627 (12 L. R. A. (N. S.) 389), after some discussion of the authorities, indicates its approval of the rule that:

"If one, in blasting upon his own lands, invades the premises of his neighbor, by throwing stones and debris thereon, he is liable for the resulting injury; but for any other injury, such as may result from the mere concussion of the atmosphere, sound, or otherwise, there is no liability, unless it is shown that the work was done negligently and that the injury was the result of negligence, and not the result of blasting according to the usual methods and with reasonable care."

Such seems also to be the rule in New York. *Booth v. Rome, etc., Terminal Co.,* 140 N. Y. 267; *Benner v. Atlantic Dredging Co.,* 134 N. Y. 156 (17 L. R. A. 220); *Holland House v. Baird,* 169 N. Y. 136; *Page v. Dempsey,* 184 N. Y. 245. The proposition also finds some support in *Simon v. Henry,* 62 N. J. L. 486 (41 Atl. 692); and in *MacGinnis v. Marlborough & H. Gas Co.,* (Mass.) 108 N. E. 364. The Michigan case cited by appellant (*Mitchell v. Prange,* 34 L. R. A. 182) does not appear to us to be in point.

It will be noted, upon reading the cases to which we have referred and others of their class, that, with few exceptions, they refer to the effect of the use of explosives under the authority of or contract with the general government, or in the construction of railways or canals by corporations endowed by the state with the power of eminent domain, or in excavating streets or highways under the authority of the state or local municipality; and without conceding what is claimed by way of exemption from liability even in such cases, it may well be admitted that the effect of such circumstances is a question upon which there is room for plausible argument in support of the theory. The appellant herein, though clothed with license or consent from the Federal government to dam the Mississippi River, a navigable stream, is not in position to claim the immunities, if any, of a government contractor; and although it proposes to supply electricity to the public within the territory which its lines may cover, it is, to all intents and purposes, a strictly private enterprise for private profit. And even though it be clothed with power of eminent domain, that does not include authority to take or to destroy private property without compensation.

That what we may call the New York rule is not in harmony with the greater weight of authority is, we think, clearly demonstrable. The following are illustrative cases. In a recent Ohio case, the city of Cincinnati had let a contract to excavate a tunnel under its streets for use in supplying the city with water. A lot owner brought action against the city

and the contractor, alleging that, in doing the work, high
power explosives were employed, with the result that the con-
cussions and vibrations so produced injured and destroyed
plaintiff's property.   No negligence was alleged, and the
defendants demurred to the petition.   The trial court sus-
tained the demurrer; but, on appeal to the Supreme Court,
the ruling was reversed.   The court states the question to be
whether the owner of property may make use of powerful
explosives on his own premises in the accomplishment of a
lawful purpose, provided he uses due care, notwithstanding the
fact that the necessary or natural or probable result thereof
is to injure or destroy adjacent property.   This, it will be
seen, is precisely the proposition we have now before us.   In
sustaining the right of action, the court says:

"There are, of course, two very important considerations
to be kept in mind in the disposition of a question of this
character:   First, to give to the owner the largest liberty pos-
sible, in the occupation, use and improvement of his own
property, consistent with the rights of others, and the right
to employ modern methods and machinery in accomplishing
the improvements desired; second, that. one may not use his
own property to the injury of any legal right of another.   This
maxim of. the common law, 'Sic utere tuo ut alienum non
laedas', is so well established and so universally recognized
that it needs neither argument nor citation of authority in
its support.   But it must be conceded that this is no longer
the law, if the owner of a lot may employ such means in
the improvement in the use of his property as will naturally
and necessarily result in the destruction of adjoining prop-
erty. . . .   If the means employed will, in the very nature
of things, injure and destroy his neighbor's property, not-
withstanding the highest possible care is used in the handling
of the destructive agency, the result to the adjoining prop-
erty is just as disastrous as if negligence had intervened.   If
one may knowingly destroy his neighbor's property in the
improvement of his own, it is little consolation to the neighbor

to know that his property was destroyed *with due care and in a scientific manner."* *Louden v. Cincinnati,* (Ohio) 106 N. E. 970.

In a very similar case in Illinois, where the use of dynamite in constructing a tunnel caused vibrations and jars from which the plaintiff's building was injured, the court distinctly declines to follow the New York rule and adopts the rule of the Ohio cases. *Fitzsimons v. Braun,* (Ill.) 59 L. R. A. 421. To the same effect, see *Colton v. Onderdonk,* 69 Cal. 155; *Hickey v. McCabe,* (R. I.) 75 Atl. 404; *Carman v. Steubenville & I. R. Co.,* 4 O. St. 399; *Gossett v. Southern R. Co.,* 115 Tenn. 376; *Chicago v. Murdock,* 212 Ill. 9; *Longtin v. Persell,* 30 Mont. 306; *Bradford v. St. Mary's Co.,* 60 O. St. 560; *City of Tiffin v. McCormack,* 34 O. St. 638; *Cahill v. Eastman,* 18 Minn. 324.

The rule as deduced by Thompson, in his work on Negligence, Section 764, is stated to be that recovery may be had for injuries done by blasting: (1) Where dirt and stones are thrown by the blast upon the property, irrespective of the question of negligence; (2) where the work of blasting is done in a situation where it is necessarily dangerous to persons or property, whether the injury proceeds from the impact of rocks thrown or from atmospheric concussion, irrespective of the care or skill used; (3) in all other cases, liability will attach to the person or corporation carrying on the dangerous employment where the work has been negligently done. Even the court of New York has said that it is "an elementary principle in reference to private rights, that every individual is entitled to the undisturbed possession and lawful enjoyment of his own property. The mode of enjoyment is necessarily limited by the rights of others". This rule the court applied to a recovery of damages for injuries resulting from blasting done in the construction of a canal. *Hay v. Cohoes Co.,* 2 N. Y. 159. In so doing, the court says:

"The use of land by the proprietor is not an absolute right, but qualified and limited by the higher right of others

to the lawful possession of their property.   To this posses-
sion, the law prohibits all direct injury, without regard to
its extent or the motives of the aggressor.  A man may prose-
cute such business as he chooses upon his premises, but he
cannot erect a nuisance to the annoyance of the adjoining pro-
prietor, even for the purpose of a lawful trade.   He may
excavate a canal, but he cannot cast the dirt or stones upon the
land of his neighbor, either by human agency or by the force
of gunpowder.   If he cannot construct the work without the
adoption of such means, he must abandon that mode of using
his property, or be held responsible for all damages result-
ing therefrom.   *He will not be permitted to accomplish a
legal object in an unlawful manner.*"

The same court has distinctly and repeatedly held that
one who by blasting casts rock or other substances upon the
property of another is liable for the injury so done, without
regard to the question of negligence, and that the plea that
blasting is a necessary operation or that the work is being
done under contract with the state is no defense. *Sullivan v.
Dunham,* 161 N. Y. 290; *St. Peter v. Denison,* 58 N. Y. 416.
These decisions that court has often re-affirmed and still
declares its adherence thereto, but seeks to distinguish them
from the line of its other decisions above cited by pointing out
that, in the *Cohoes* case and in others following it, the injury
was done by casting debris upon the plaintiff's premises; while
in cases of the kind we have now before us, the injury com-
plained of results from concussion of the atmosphere, or from
vibrations of the earth.   The former, it is said, constitutes
a physical invasion, a trespass, upon the plaintiff's property,
while the latter does not.   The deduction is neither obvious nor
convincing.   Physical invasion of the property of another
does not necessarily imply an actual breaking or entering of
the plaintiff's close by the wrongdoer in person, or casting
upon his premises any particular kind of missile or other
particular thing or substance.   The employment of force of
any kind which, when so put in operation, extends its energy

into the premises of another to their material injury, and renders them uninhabitable, is as much a physical invasion as if the wrongdoer had entered thereon in person and by overpowering strength had cast the owner into the street. If, for example, a person interests himself in solar phenomena and, while experimenting with a powerful sun glass, he accidentally focuses the instrument upon some inflammable material on the lot of his next-door neighbor, starting a blaze which results in injury and loss to the latter, can it be said that there was no trespass, no actual invasion of the neighbor's premises? Or suppose one owning land bordering upon a small lake or pond finds that some desired improvement requires the blasting or cutting down of a rock bluff standing at the edge of the water. To accomplish this, he places a powerful blast, fires it and casts such a body of material into the pond as to create a miniature tidal wave, which, rolling across to the other side, does material injury to the property of another riparian owner. Is there no trespass or physical invasion of the neighbor's premises? It has often been held that the casting or discharge of noxious vapors or gases into the air, which, spreading abroad, invade the home or place of business of another, constitutes an actual wrong. In a legal sense, how does an injury inflicted by the act of one who casts a rock against his neighbor's house or destroys his property by turning loose the ungoverned energy of water in motion differ from an injury caused by one who voluntarily imparts destructive force and energy to the air, or who, by the use of the almost limitless powers of modern explosives, creates a little earthquake? On this subject, the Rhode Island court says:

" 'An act which in many cases is in itself lawful, becomes unlawful when by it damage has accrued to the property of another. And it would make no material difference whether that damage, resulting proximately and naturally from the act of blasting by the defendant, was caused by rocks thrown against plaintiff's dwelling house or by a concussion of the

air around it'.  .  .  .  In such case, one who thus causes
dangerous forces to pass through another's property should
be held liable for the damage resulting directly therefrom.
And there is no more reason for requiring that negligence be
shown in one case than in the other.'' *Hickey v. McCabe,*
(R. I.) 75 Atl. 404.

Speaking of the attempted distinction to which we have
referred, the court, in *Louden v. Cincinnati, supra,* says:

''We are unable to distinguish between a case where a
fragment of rock or a portion of the soil is thrown onto an
adjoining property and a case where the force of an explosion
is transmitted through the soil and substratum, jarring,
cracking and breaking it, destroying the  .  .  .  foundation
of the building, and wrecking the building itself by a concus-
sion of the air around it, thereby doing far more injury than
a fragment of rock could do.  It is a distinction without a dif-
ference.  If this terrific force may be set in motion by the
owner of one parcel of ground, with full knowledge upon his
part that such force will invade, damage and destroy the
property of the adjoining proprietor, what difference does it
make how this force accomplishes the result that, in the very
nature of things, must have been anticipated?  Is not a con-
cussion of the air, and jarring, breaking and cracking the
ground with such force as to wreck the buildings thereon,
as much an invasion of the rights of the owner as the hurling
of a missile thereon?  If there is any difference whatever, it
is purely technical, and ought to find no favor with the
courts.  Certainly, the application of a force sufficient to
crack the surface of the land,  .  .  .  to destroy the founda-
tions of buildings, to break windows and throw down chim-
neys, is a direct invasion of property rights.''

Likewise, in the cited Illinois case, *Fitzsimons v. Braun,*
*supra,* the court, referring to another case, said:

''It is true that, in that case, there was an actual invasion
of the property  .  .  .  but liability for injuries caused by

actual invasion of the property, or by the concussion or vibration of the earth or air, are within the doctrine there announced. If one who, for his own purposes and profit, undertakes to perform a work, by means of explosives inherently dangerous to the property of another, should be held liable for an injury occasioned by any substance cast by the explosives on the property of such other, it is only by the merest subtlety of reasoning he should be held *not* liable to respond for equal or greater damage caused by the concussion of the air or of the earth.''

The rule thus affirmed seems to be the rule of reason and to have the support of the better considered precedents.

The consideration urged upon us in oral argument, that appellant is engaged in the construction of a great work of general utility, and that the laws should be liberally construed to promote its purpose, is not without weight, where it can be indulged without sacrifice of principle. But, important as it may be that business progress and that development shall not be fettered by over-technical interpretation of the laws affecting them, it is, to say the least, of equal importance that the courts maintain unimpaired all our constitutional and legal guaranties of personal and property rights. The individual citizen may be deprived of his home or other property by the proper exercise of the power of eminent domain; but it ought not to be said that it can be lawfully destroyed without compensation in the interest of a mere business enterprise, simply because such enterprise is of great magnitude and general public interest.

The Iowa cases cited by appellant are not out of harmony with the views here expressed. *Slatten v. Des Moines*, 29 Iowa 148, quoted from by counsel, is not at all in point. The act there complained of involved no invasion of or physical injury to the plaintiff's property. The defendant, acting under grant of authority from the city, had constructed a bridge across the Des Moines River, and, in building the necessary approach, had raised the grade of the street in front

of plaintiff's hotel, and for this he sought to recover damages. Under the statute as it then stood, it was held that no recovery could be had except upon allegation and proof that the authority given to construct the bridge and approach had been exercised in a negligent or improper manner. The mere statement of the facts makes clear the inapplicability of the precedent to the question before us. Had the defendant in that case made use of some high explosive in the course of its work, and, by the jar or concussion so produced, shattered the walls, windows and foundations of plaintiff's hotel, a very different proposition would have been presented to the court, and we may well assume that recovery of damages would not have been denied. Equally foreign to the discussion is *Walker v. Chicago, R. I. & P. R. Co.*, 71 Iowa 658. There, the defendant, as a common carrier, was transporting a shipment of giant powder, which exploded, doing injury to plaintiff's property in that vicinity; and it was held that defendant could be made liable only upon a showing of negligence on its part. The defendant, as a common carrier, was acting in the line of its public duty in receiving and transporting the car with its load; and if, in so doing, it exercised all the care reasonably required under the circumstances, it was not liable for the results of an explosion not intentionally occasioned, and occurring without its agency or its fault. The other precedents cited from our decisions are all of the same general character. None of them announce a rule or principle affecting the soundness or propriety of the rulings or judgment from which this appeal has been taken. The nearest in point, perhaps, are cases like *Ochiltree v. Chicago & N. W. R. Co.*, 93 Iowa 628, 631, where the wrong charged was the sounding of a steam whistle or the operation of a gasoline engine near the highway, and the consequent frightening of teams. The obvious difference between these cases and the one at bar is in the fact that use of high explosives is inherently dangerous and, when used in quantities sufficient to create violent disturbance of the earth and air, injury naturally results, or may

reasonably be anticipated, to property within the area of such disturbance, without regard to the care exercised in doing the work or in guarding against its destructive effects; while, with the exercise of due care in operating an engine or blowing a whistle, with like measure of care on the part of drivers, little, if any, danger is to be anticipated from the frightening of teams. The trial court did not err in failing to charge the jury that proof of negligence was necessary to plaintiff's recovery.

II. It is conceded that the work of making the rock excavation and the blasting incident thereto were done by a contractor to whom the job had been let by the appellant, and this, counsel argue, brings the case within the rule which exempts the owner from liability for the act or fault of an independent contractor. The rule thus invoked is of undoubted soundness, as related to a proper case involving consideration of the law of negligence; but since we hold that defendant's liability is not bottomed upon a charge of negligence in the ordinary sense of that word, the fact that the work was let to and done by a contractor is not a matter of decisive significance. That the work let to the contractor contemplated that it should be done by blasting is not disputed, and the whole defense and the argument in support thereof assume the necessity and propriety of the 'employment of explosives in such construction. The work being intrinsically dangerous and, even when properly done, liable to be attended with injurious, if not destructive, results to buildings and property in the city in the immediate neighborhood of which the blasting was to be done, defendant could not relieve itself from liability by delegating the work to a contractor. *Prowell v. Waterloo,* 144 Iowa 689. It is nowhere suggested or shown that the contractors did other than the very thing they were employed and expected to do, and for any actionable injury resulting therefrom under such circumstances, the owner is always

3. MASTER AND SERVANT: independent contractor: *respondeat superior*: inherently dangerous work.

liable.  *Chicago v. Robbins,* 67 U. S. 418, 428 (17 L. Ed. 298, 304) ; *Robbins v. Chicago,* 71 U. S. 657, 679 (18 L. Ed. 427, 432) ; *St. Paul Water Co. v. Ware,* 83 U. S. 566 (21 L. Ed. 485).  In the last mentioned case, the court says:

"If the contractor does the thing which he is employed to do, the employer is as responsible for the thing as if he had done it himself; but if the act which is the subject of complaint is purely collateral to the matter contracted to be done, and arises indirectly in the course of the performance of the work, the employer is not liable, because he never authorized the work to be done."

Again, in the same case, it is said that "where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agreed and was authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party".  Indeed, it would be a singular perversion of justice for the court to say that where an act, if done by the owner himself, renders him liable to a person thereby injured, without regard to any question of negligence, he may escape such consequences by the simple expedient of employing a contractor to do it for him.  Dealing with a case where a contractor, in doing a public work for a city, necessarily used explosives, exercising therein all reasonable care, the city was held liable for the resulting injury to adjacent property.  *City of Joliet v. Harwood,* 86 Ill. 110.  In disposing of the question, the court says:

"The work which the contractor was required by the city to do was intrinsically dangerous, however carefully or skillfully done.  The right of recovery in this case does not rest upon a charge of negligence on the part of the contractor; it rests upon the fact that the city caused work to be done which was intrinsically dangerous—the natural, (though not the necessary) consequence of which was the injury to plaintiff's property."

The same rule was applied in *Fitzsimons v. Braun,* 199

Ill. 390; *Louden v. Cincinnati*, (Ohio) 106 N. E. 970; *Hawver v. Whalen*, 49 O. St. 69; *Southern Ohio R. Co. v. Morey*, 47 O. St. 207; *Hughes v. Cincinnati & Springfield R. Co.*, 39 O. St. 461, 476. The true rule is well stated in the last cited case, as follows:

"The employer cannot relieve himself from liability, by contracting with others for the performance of work, where the necessary or probable effect of the performance of the work will be to injure third persons."

The trial court correctly held that the rule exempting an owner from libaility for the negligence of an independent contractor is not applicable to the instant case.

III. The court instructed the jury that, if found entitled to recover, the plaintiff's measure of damages was the reasonable cost of restoring the injured buildings to the condition they were in immediately before the injury thereto. This is said to be an incorrect statement, and that the true measure is the difference between the fair value of the property immediately before and immediately after such injury.

4. DAMAGES: measure of damages: damages to real property: restoration to former condition.

The measure of damage for injury to real property is not invariable, and there may be circumstances under which either of the rules stated would be applicable. The rule stated by appellant is more often applied where the damage is permanent, or cannot well be expressed in specific items of injury capable of easy repair or remedy, but does affect in some substantial degree the value of the entire property as a unit. But where the injury is susceptible of remedy at moderate expense, and the cost of restoring it may be shown with reasonable certainty, the rule given the jury by the trial court is entirely proper. *Shrieve v. Stokes*, 8 B. Mon. 453; *Fitzsimons v. Braun*, 199 Ill. 390; *Graessle v. Carpenter*, 70 Iowa 166; *McMahon v. Dubuque*, 107 Iowa 62.

IV. Exceptions to the court's instructions are based principally upon appellant's theory that its liability, if any, is for

negligence, and upon the idea that the rule as to negligence of independent contractors is applicable to this case. The court has already passed upon those propositions adversely to the position of appellant, and they need not be further considered.

There is no error shown calling for a reversal of the judgment appealed from, and it is—*Affirmed*.

Evans, C. J., Deemer and Preston, JJ., concur.